

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## WASHINGTON, D. C. 20001

Date: 09/26/2018

The Honorable Angela Caesar, Clerk
United States District Court for the District of Columbia
3rd & Constitution Avenue, Washington, D.C. 20001

**In Re: Kevin A. Fahey vs. River North Foods Inc., et. al.**

**Civil Action Number: 18ca5498**            **U.S. District Number: 18cv2134**

Dear Ms. Angela Caesar:

Transmitted herewith are all of the pleadings filed in the above captioned case pursuant to a Petition for Removal Filed on September 14, 2018. A certified copy of the docket entries is also enclosed.

Please acknowledge receipt of our file on the duplicate copy of this letter, and return it to this Court.

Sincerely,

Joy Jefferson, Branch Chief
Civil Actions Branch

By: /s/ *Aletre Barnett*

| Case Number | Status | Judge |
|---|---|---|
| 2018 CA 005498 B | Closed | PUIG-LUGO, HIRAM E |

| In The Matter Of | Action |
|---|---|
| FAHEY, A. KEVIN  Vs. RIVER NORTH FOODS INC et al | Complaint for Consumer Protection Act Filed |

| Party | | Attorneys |
|---|---|---|
| FAHEY, A. KEVIN | PLNTF | WILLCOX, Mr THOMAS C |
| RIVER NORTH FOODS INC | DFNDT | |
| FRONTERA FOODS INC. RIVER NORTH FOODS INC. | DFNDT SUCCESSOR | GASPER, GEORGE A |

| Opened 08/01/2018 | Disposed Removal-Notice of Removal To USDC | Case Type Civil II |
|---|---|---|

Comments:

| No. | Date of Journal | Pleadings Filed, Orders and Decrees Book-Page-Nbr    Ref Nbr | Amount Owed/ Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 1 | 📷 09/26/18 | Notice of Hearing Mailed Next Business Day<br><br>Notice Of Removal<br>Sent on:  09/26/2018  09:43:17.21 | 0.00 | 0.00 |
| 2 | 09/14/18 | Notice of Removal to USDC for the District of Columbia. 18cv2134 | 0.00 | 0.00 |
| 3 | 09/14/18 | Event Resulted:<br>The following event: Initial Scheduling Conference-60 scheduled for 11/02/2018 at 9:30 am has been resulted as follows:<br><br>Result: Event Not Held Case Dismissed Judge: PUIG-LUGO, HIRAM E    Location: Courtroom 317 | 0.00 | 0.00 |
| 4 | 📷 09/14/18 | Consent Motion for Enlargment of Time to Respond to Amended Complaint. Filed. Submitted. 09/14/2018 15:59. ncv.<br>Attorney: GASPER, GEORGE A (488988) FRONTERA FOODS INC. (Defendant); Receipt  408755  Date: 09/19/2018 | 20.00 | 0.00 |
| 5 | 📷 09/14/18 | Additional eFiling Document to Notice of Removal to Federal Court Filed. Submitted 09/14/2018 13:32 jhcs. Attorney: GASPER, GEORGE A (488988) FRONTERA FOODS INC. (Defendant); | 0.00 | 0.00 |

2018 CA 005498 B    FAHEY, A. KEVIN  Vs. RIVER NORTH FOODS INC et al

| No. | Date of Journal | Pleadings Filed, Orders and Decrees Book-Page-Nbr        Ref Nbr | Amount Owed/ Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 6 | 09/14/18 | Notice of Removal to Federal Court Filed. Submitted 09/14/2018 13:32 jhcs. Attorney: GASPER, GEORGE A (488988) FRONTERA FOODS INC. (Defendant); | 0.00 | 0.00 |
| 7 | 08/13/18 | Amended Complaint and Demand for Jury Trial Filed. submitted 08/13/2018 19:49. :ds Attorney: WILLCOX, Mr THOMAS C (445135) A. KEVIN FAHEY (Plaintiff); | 0.00 | 0.00 |
| 8 | 08/03/18 | Complaint Package eServed | 0.00 | 0.00 |
| 9 | 08/02/18 | Issue Date: 08/02/2018 Service: Summons Issued Method: Service Issued Cost Per: $  RIVER NORTH FOODS INC 449 N CLark St CHICAGO, IL   60654 Tracking No: 5000206857 | 0.00 | 0.00 |
| 10 | 08/02/18 | Initial Order and Addendum Issued (60 Days)  Initial Order-60 Days Sent on: 08/02/2018  09:46:24.71 | 0.00 | 0.00 |
| 11 | 08/02/18 | Event Scheduled Event: Initial Scheduling Conference-60 Date: 11/02/2018    Time: 9:30 am Judge: PUIG-LUGO, HIRAM E    Location: Courtroom 317 | 0.00 | 0.00 |
| 12 | 08/01/18 | eComplaint. Filed. Submitted. 08/01/2018 19:20. ncv. (NO INFORMATION SHEET SUBMITTED AT FILING) Attorney  WILLCOX, Mr THOMAS C (445135) A. KEVIN FAHEY (Plaintiff); | 0.00 | 0.00 |
| 13 | 08/01/18 | Complaint for Consumer Protection Filed  Receipt: 404922  Date: 08/02/2018 | 120.00 | 0.00 |

|  | Totals By:  Cost Information | | 140.00 | 0.00 |
|---|---|---|---|---|
|  |  |  | 0.00 | 0.00 |

CRTR5925                                    Summary

2018 CA 005498 B    FAHEY, A. KEVIN  Vs. RIVER NORTH FOODS INC et al

                        *** End of Report ***

Filed
D.C. Superior Court
09/14/2018 13:32PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

A. KEVIN FAHEY on behalf of the General Public
of the District of Columbia,

        Plaintiff,

    v.

FRONTERA FOODS, INC., Successor in Interest
to River North Foods, Inc.,

        Defendant.

Civil Action No: 2018 CA 005498 B

## <u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

PLEASE TAKE NOTICE that on September 14, 2018, Defendant River North Foods, Inc.

f/k/a Frontera Foods, Inc., a dissolved corporation which is incorrectly named as Frontera Foods, Inc.

("River North"), filed a ***Notice of Removal*** of this action, pursuant to 28 U.S.C. §§ 1332, 1441,

1446 and 1453 in the United States District Court for the District of Columbia.  Pursuant to

28 U.S.C. §1446(d), "the State court shall proceed no further unless and until the case is

remanded." A copy of the ***Notice of Removal***, without exhibits, is attached here to as **Exhibit A**.

Dated: September 14, 2018

                Respectfully submitted,

                /s/ George A. Gasper
                George A. Gasper (#488988)
                ICE MILLER LLP
                One American Square, Suite 2900
                Indianapolis, IN 46282
                (317) 236-2275
                george.gasper@icemiller.com

                *Counsel for Defendant, River North Foods,*
                *Inc. f/k/a Frontera Foods, Inc., a dissolved*
                *corporation which is incorrectly named as*
                *Frontera Foods, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 14, 2018, a copy of this filing was eServed in accordance with the provisions of Administrative Order 13-15, on the following persons:

> Thomas C. Willcox
> Attorney at Law
> 1701 16th Street, N.W.
> Suite 211
> Washington DC 20009
> Tcw19law@gmail.com

/s/ George A. Gasper

I\13501232.2

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

A. KEVIN FAHEY, on behalf of the General
Public of the District of Columbia,
5301 Birds View Lane, Unit D
Alexandria, VA 22312

                Plaintiff,

        v.                                              Cause No. 1:18-cv-02134

FRONTERA FOODS, INC., Successor in Interest            **JURY TRIAL DEMANDED**
to River North Foods, Inc.,
449 N. Clark Street, Suite 205
Chicago, IL 60654

                Defendant.

## NOTICE OF REMOVAL

    Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant, River North Foods,

Inc. f/k/a Frontera Foods, Inc., a dissolved corporation which is incorrectly named as Frontera

Foods, Inc. ("Defendant" or "River North"),[1] hereby removes this action from the Superior Court

of the District of Columbia to the United States District Court for the District of Columbia.

Removal is based on diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA"),

28 U.S.C. §§ 1332(d)(1)-(d)(10) and 1453 because (1) Plaintiff asserted this case as a class

action under the laws of the District of Columbia and within the meaning of 28 U.S.C. §§

1332(d)(1)(B), (2) Plaintiff is a citizen of a state different from Defendant, (3) the aggregate

---

[1] The Complaint names "Frontera Foods, Inc. Successor in interest to River North Foods, Inc."
as the sole Defendant. However, Frontera was not a "successor in interest" to River North
Foods, Inc. Rather, in September 2016 Frontera changed its name to River North Foods, Inc.
River North was voluntarily dissolved in December 2017. Defendant expressly preserves, and
does not waive, any defenses it has to the underlying lawsuit related to the misnomer and/or
corporate dissolution of River North.

**EXHIBIT A**

amount in controversy exceeds $5,000,000, and (4) all other requirements for removal have been met. In support of this Notice of Removal, Defendant states as follows:

## I.   BACKGROUND AND PROCEDURAL POSTURE.

1.   This putative class action was originally filed by Plaintiff in the Superior Court of the District of Columbia on August 2, 2018.  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as **Exhibit A**.

2.   Plaintiff expressly asserts this case "**has been brought and may be maintained as a class action pursuant to Superior Court Rule of Civil Procedure 23.**" (Compl. ¶ 24) (emphasis added).  Additionally, the Complaint contains "class allegations," a "class definition," discussions of traditional class action requirements, such as "numerosity," "commonality," and "predominance," and a list of alleged "common questions."  (*Id.* ¶¶ 24-27.)  Thus, while Defendant denies that this lawsuit may proceed as a class action, it has clearly been brought by Plaintiff as a class action within the meaning of 28 U.S.C. §§ 1332(d)(1)(B).

3.   Defendant received a copy of the initial pleading captioned "Amended Complaint and Demand for Jury Trial" ("Complaint") on August 17, 2018, when this pleading was delivered by process server to undersigned counsel.

4.   In the Complaint, Plaintiff challenges the alleged use of the term "natural" and the phrase "evaporated cane juice" on 77 products.  (*Id.* ¶¶ 28-48.)

5.   Based on those allegations, Plaintiff asserts the following causes of action: (1) Violation of the District of Columbia Consumer Protection Procedures Act ("CPPA") – Implied and Express Warranties (*id.* ¶¶ 49-57); (2) Violations of the CPPA (*id.* ¶¶ 57-58); and (3) Violations of the DC Commercial Code (Sections a, b, d, e, h) (*id.* ¶¶ 60-61).

6.      Plaintiff seeks damages, including alleged treble and statutory damages of "$1,500 per violation, whichever is greater." (*Id.* ¶¶ 15 and Prayer for Relief.)  Plaintiff also seeks "attorneys' fees, punitive damages, injunctive relief" under the CPPA.  (*Id.*)  Finally, Plaintiff seeks "disgorgement of profits obtained through the sale of the covered products in the District of Columbia." (*Id.* at Prayer for Relief.)

7.      In filing this Notice of Removal, Defendant does not waive, and specifically reserves, any and all objections as to service, personal jurisdiction, and any and all other available defenses.

## II.      THIS NOTICE OF REMOVAL IS TIMELY FILED IN THE PROPER VENUE.

8.      This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of causes.

9.      The removal of this action to this Court is timely under 28 U.S.C. §§ 1446(b) and 1453(b) because this Notice of Removal is filed within thirty days after August 17, 2018, which is the date of first receipt by Defendant of the Complaint in this action.

10.     The United States District Court for the District of Columbia is the proper place to file this Notice of Removal under 28 U.S.C. § 1441(a) because it is the federal district court that embraces the place where the original action was filed and is pending.

## III.     JURISDICTION – CLASS ACTION FAIRNESS ACT

11.     Plaintiff asserts a class action as defined by 28 U.S.C. § 1332(d)(1). (*Id.* ¶ 24.) Although Defendant will challenge that this suit is properly maintainable as a class under Fed. R. Civ. P. 23, this Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(1)-(d)(10), 1453.

12.     Removal is proper because: (1) the suit is a putative class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant; (2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and (3) no relevant exceptions apply.

### a. __Diversity of Citizenship__

13.     Diversity of citizenship exists in this case under 28 U.S.C. § 1332(d)(2)(A) because the Plaintiff is a citizen of a state different from that of Defendant.

14.     Plaintiff is a citizen of the Commonwealth of Virginia. (*See* Compl. ¶ 11.)

15.     Defendant is not a properly named or ongoing legal entity. Pursuant to the records maintained by the Illinois Secretary of State, Frontera Foods Inc. ("Frontera") changed its name to River North Foods, Inc. in September 2016. River North, Inc. was voluntarily dissolved in December 2017. A copy of the Illinois Secretary of State's "Corporate File Detail Report" is attached hereto as __Exhibit B__.

16.     This Court recently addressed the citizenship of a dissolved corporation for removal purposes. *Colon v. Ashby*, 2018 U.S. Dist. LEXIS 96709, *8 (D.C. Dist. 2018). In *Colon*, the Court found that "a dissolved corporation remains a citizen of its state of incorporation for purposes of removal." *Id.* Additionally, after discussing the current split of authority regarding the significance (if any) of a dissolved corporation's principal place of business, this Court found that, at least in some circumstances, a dissolved corporation may also remain a citizen of its principal place of business after dissolution. *Id.* at 8-14.

17.     Before its name change and dissolution, Defendant was an Illinois corporation with its principal place of business in Chicago, Illinois. (*See* Compl. ¶ 12 (alleging state of

incorporation and principal place of business); Ex. B.)   Thus, Defendant remains an Illinois citizen for diversity purposes. *Colon*, 2018 U.S. Dist. LEXIS 96709, *8-*14.

18.     Accordingly, minimal diversity of citizenship existed at the time of the filing of the Complaint and at the time of removal, because the Plaintiff (citizen of Virginia) is a citizen of a different state than Defendant (citizen of Illinois).

**b.  Amount in Controversy**

19.     Under 28 U.S.C. § 1332(d) a putative class action is removable if it satisfies the amount in controversy requirements under CAFA contained in 28 U.S.C. § 1332(d)(2); namely, if the *aggregate* amount in controversy is greater than $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

20.     Importantly, when enacting CAFA, Congress intended that the amount in controversy requirement "be interpreted expansively, and its provisions read broadly, with a strong preference for federal jurisdiction." *Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 601 (E. Dist. Tex. 2009) (*citing* S. Rep. No. 109-14, at 42-43).   Indeed, "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should *err in favor of exercising jurisdiction* over the case." S. Rep. No. 109-14, at 42 (2005) (emphasis added). Accordingly, as this Court recently recognized, under CAFA "no antiremoval presumption attaches because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Bradford v. George Washington Univ.*, 249 F. Supp. 3d 325, 331 (D.C. Dist. 2017) (*quoting Dart Cherokee Basin Operating Co. v. Owns*, --- U.S. ----, 133 S.Ct. 547, 554 (2014)).

21. Consistent with this Congressional bias towards federal jurisdiction over class actions, courts consider – and aggregate – a wide variety of damages when determining whether CAFA's jurisdictional threshold has been satisfied. Specifically, courts consider compensatory damages, statutory damages, punitive damages, and attorneys' fees (where permitted by statute). *See Bradford*, 249 F. Supp. 3d at 331 (discussing types of damages that may be aggregated for CAFA purposes); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (considering attorneys' fees in calculating the CAFA amount-in-controversy requirement); *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 137-38 (D.C. Dist. 2015) (using treble damages in determining whether the CAFA amount-in-controversy requirement is satisfied).

22. CAFA's $5,000,000 amount in controversy requirement is easily met here. Plaintiff's proposed class includes every current or former resident of D.C. who purchased one of 77 different food products "during the time period beginning three years prior to the filing of this action until judgment is entered." (Compl. ¶ 24 ("Class Definition" and "Relevant Time Period"); 28 (defining "the Products" to include 77 different products).)

23. Notably, Plaintiff's Complaint seeks treble and statutory damages of "$1,500 per violation, whichever is greater" in addition to "attorneys' fees, punitive damages, injunctive relief" under the CPPA. (*Id.* ¶ 15 and Prayer for Relief.) Additionally, Plaintiff seeks "disgorgement of profits." *Id.*

24. Plaintiff's claim for statutory damages of "$1,500 per violation" alone satisfies the CAFA amount in controversy requirement. At $1,500 per transaction, Plaintiff's alleged damages would reach $5,000,000 if Frontera had only sold 3,334 units of the 77 subject products over the course of the three-year class period. In fact, D.C. sales of subject Frontera products far exceeded that number – with individual SKUs comprising tens of thousands of sales during

portions of the class period. While such aggregation of damages would not typically be appropriate outside of the class action context, CAFA is clear that "[i]n any class action," such as this, "the claims of the individual class members **shall be aggregated** to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6) (emphasis added).

25.    Though less susceptible to precise calculation, Plaintiff also prays for attorneys' fees (subject to statutory authority), punitive damages, disgorgement, and injunctive relief. These additional damages are likewise aggregated with the statutory damages when determining the amount in controversy. *Id.*

26.    When viewed as a whole, the claims asserted by Plaintiffs yield an amount in controversy over and above the CAFA jurisdictional limit.

c.   **Number of Class Members**

27.    This putative class action was filed by one named Plaintiff. Thus, only 99 putative class members are necessary to meet the minimum 100 class member requirement of CAFA. 28 U.S.C. § 1332(d)(5)(B).

28.    Plaintiff's proposed class includes every current or former resident of D.C. who purchased one or 77 different food products "during the time period beginning three years prior to the filing of this action until judgment is entered." (Compl. ¶¶ 24 ("Class Definition" and "Relevant Time Period"); 28 (defining "the Products" to include 77 different products).)

29.    If each product was purchased by just one unique D.C. customer a year during the three-year class period, the class would include 231 members – over twice the CAFA requirement. As discussed above, many Frontera products sold tens of thousands of units in

D.C. during the putative class period. It is thus evident that CAFA's 100-member requirement is satisfied.

## IV. NOTICE OF REMOVAL TO THE SUPERIOR COURT OF DISTRICT OF COLUMBIA.

30.    Concurrently with this Notice of Removal, Defendant will file a copy of this Notice with the Superior Court of the District of Columbia, and serve same on Plaintiff.

31.    If any questions arise about this removal or the basis for same, Defendant respectfully requests the opportunity to present briefing and oral argument in support of removal.

WHEREFORE, Defendant files this Notice of Removal and removes the civil action to the United States District Court for the District of Columbia.

Respectfully submitted,

/s/ Derek R. Molter
Derek R. Molter (D.C. Bar No. 984962)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
Tel. (317) 236-2100
Fax (317) 236-2219
derek.molter@icemiller.com

*Counsel for Defendant, River North Foods, Inc.*
*f/k/a Frontera Foods, Inc., a dissolved corporation*
*which is incorrectly named as Frontera Foods, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2018, I electronically filed the foregoing *Notice of Removal* with the Clerk of the Court using the CM/ECF System and served a true and correct copy of same on counsel for Plaintiff via First-Class Mail, postage prepaid, addressed to:

Thomas C. Willcox
1701 16th Street, NW, Suite 211
Washington, D.C. 20009


/s/ Derek R. Molter
Derek R. Molter


I\13501948.1

9

**Filed**
**D.C. Superior Court**
**08/13/2018 19:49PM**
**Clerk of the Court**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

A. Kevin Fahey )
5301 Birds View Lane, Unit D )
Alexandria, VA )

)
on behalf of the General Public of the )
District of Columbia )     Civil Action No: 2018 CA 0054498 B

)     Judge Hiram E. Puig Lugo

Plaintiff, )     Initial Conference

v. )     Friday November 2nd 2018

Frontera Foods, Inc. )
Successor in interest to )
River North Foods  Inc. • )
449 N. Clark Street, )
Chicago IL 60654. )

)     Jury Trial Demanded
Defendant )

)

)

)

)

)

)

)

)

---

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kevin Fahey ("Plaintiff"), by and through his counsel, brings this action

against  Frontera Foods Inc, formerly known as River North Foods Inc (" Frontera" or the

1

"Defendant") on behalf of the General Public of the District of Columbia, and alleges the following based upon information, belief and the investigation of counsel:

## NATURE OF THE CASE

1. Plaintiff brings this action on behalf of the general public in the District of Columbia to redress the pattern of fraudulent, deceptive and otherwise improper sales and marketing practices engaged in by the Defendant

2. In short, the Defendant markets numerous of its products as "all natural". Consumers are will to pay a premium for "natural" products. However, to the contrary, the products at issue contain various ingredients that do not qualify as natural. To the contrary, these ingredients are synthetic.

3. Class Members seeks to enjoin such fraud, obtain disgorgement of profits from sales of the products in question and obtain appropriate monetary damages for the consumers who purchased such products in the District of Columbia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9. This Court has personal jurisdiction over Frontera pursuant to D.C. Code §13-423 and because Frontera products are sold at stores throughout Washington, D.C.

10.    A substantial part of the actions which gave rise to Class Members' cause of action occurred in this jurisdiction.

## THE PARTIES

2

11.    Plaintiff Keven Fahey is a resident of Virginia.

12.    Frontera Foods Inc. {"Frontera) is an Illinois corporation with its principal   of business

in Chicago.  Frontera sells its food products all over the United States, including the District of

Columbia.

13.    The Complaint in this action named River Front Foods Inc as the Defendant.  However,

in 2016, River Front Foods Inc was dissolved, and Frontera is its successor in interest. The

Amend Complaint names Frontera  as the Defendant,

## LEGAL FRAMEWORK - THE INTERESTS OF THE CLASS MEMBERS AND THE GENERAL PUBLIC AND THE DC CONSUMER PROTECTION ACT

13.    The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §

28-3901 *et seq.*, prohibits unlawful trade practices.  The prohibited trade practices include, in

relevant part,

(a)  represent that goods or services have a source, sponsorship, approval,
certification, accessories, characteristics, ingredients, uses, benefits, or quantities
that they do not have
 (b). represent that goods have  characteristics, uses, or benefits that they do not
have;
 (d) represent that goods or services are of particular standard, quality, grade,
style, or model, if in fact they are of another
e. represent that the subject of a transaction has been supplied in accordance with
a previous representation when it has not; and
(h) advertise or offer goods or services without the intent to sell them or without
the intent to sell them as advertised or offered; and
(x) to sell consumer goods in a condition or manner not consistent with that
warranted by operation of sections 28:2-312 through 318 of the District of
Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

14.    Additonally, "the CPPA's extensive enforcement mechanisms apply not only to the

unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law

prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

15.      The CPPA allows for treble damages, or $1500 per violation, whichever is greater, as well as reasonable attorneys' fees, punitive damages, an injunction against the unlawful trade practice, "additional relief as may be necessary to restore the consumer money or property . . . which may have been acquired by means of the unlawful trade practice," and "any other relief the court deems proper." D.C. Code § 28-3905(k)(1).

16.      Plaintiff brings this action on behalf of himself and as a Representative Class Members acting for the interests of the general public of the District of Columbia, seeking relief from Defendant's use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

17.      Frontera food products , are "consumer good[s]", and the Defendant is a "merchant" within the meaning of the CPPA. D.C. Code § 28-3901(1)(2) and (7).

**THE FAHEY PURCHASE**

18.      On November 17th 2017, Mr. Fahey purchased a bottle of Frontera Guacamole mix, picking up the bottle from the UPS Store at 1300 Pennsylvania Avenue, N.W. A copy of the receipt is attached to the original complaint as Exhibit A.

**Class Allegations**

24.      This action has been brought and may be maintained as a class action pursuant to Superior Court Rule of Civil Procedure 23 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as

a class action.

**Relevant Time Period:** The relevant time period is defined as the time period beginning three years prior to the filing of this action until judgement is entered.

### Class Definition

All persons who reside in the District of Columbia. currently or formerly and who purchased The Products, as defined *infra* in the District of Columbia during the relevant time period.

Excluded from the class are:(1) Frontera, its subsidiaries, and its legal representatives, officers, directors, assigns and successors; and (2) all state and/or federal court judges who may preside over this case, their staff, and their immediate family members.

25.    Numerosity:    The class members are so numerous that the individuals joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the minimum required for numerosity under DC law.

26.    Commonality and Predominance:  Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members.

27.    These common questions include, but are not limited to:

(a) Whether Frontera contributed to, committed, or is responsible for the conduct alleged herein;

(b)Whether Frontera 's conduct constitutes the violations of law alleged herein;

(c) Whether Frontera acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

(d). Whether Class Members are entitled to injunctive relief; and

(e). Whether Class Members are entitled to restitution and damages; and

(f) Whether the Defendant's conduct violated the various causes of action sets forth *infra* and whether Plaintiff and the Class Members are entitled to relief, and the amount and nature of such relief in the form of an injunction and /or restitution.

5

**ALLEGATIONS OF FACTS**

28.        Defendant manufactures, sells, and distributes Mexican food products, including Nuevo

Tex-Mex Sa pica Mango Pea : Nuevo Tex—Mex Salpica I-Iabanero Lime Salsa; Nuevo Tex-

Mex Salpica Jalapeno Jacl: Queso; Frontera Salsa Tomatillo; Frontera Salsa Chipotle; Frontera

Salsa Mangc  Lime; Froitera Salsa Guajillo; Frontera Salsa New Mexico Red Chile;   Red

Tomato Sals i Mexicana (Medium); Frontera Red Tomato Salsa Mexicana (Mild); Frontera Key

Lime Cilantro Taco Skillet Sauce; Frontera Key Lime Shrimp Taco Skillet Sauce; Frontera New

Mexico Tacc Ski let Sauce;   Chicken Taco Skillet Sauce; Frontera Garlicky Camitas Slow

Cook Sauce; Frontera Garlic Pork Carnilas Slow Cook Sauce; Frontera Roasted Garlic Chicken

Skillet Sauce; Frontera Red Chile Enchilada Sauce; Frontera Texas Original Taco Sauce;

Frontera Chi>otle Garlic Taco Sauce; Frontera Ground Beef  Skillet Sauce; Frontera Classic

Fajita Skillet Sauce; Frontera Classic Red Mole Skillet Sauce; Frontera Mexican White Rice

Seasoning Si uce; Frontera Mexican Red   Seasoning Sauce; Frontera Chipotle Chili Seasoning

Sauce; Frontera Green Chile Enchilada Sauce; Roasted Tomato Chicken Skillet Sauce; Frontera

Veggie Taco Skillet Sauce; Frontera Came Asada Marinade; Frontera Chipotle I-loney

Marinade; Frontera Al Pastor  ; Frontera Three Citrus Garlic Marinade; Frontera Guacamole

Mix; Froutera Original   Mix with Tangy Tomatillo, Green Chile and Garlic; Frontera Key Lime

Avocado Salsa; Frontera Black Bean Chili Staiter; Frontera Black Bean Tomato  ; Frontera

Roasted Tomato Soup; Frontera Enchilada Sauce Chipotle Garlic; Frontera Cranberry Salsa;

Frontera Classic Tortilla Soup; Frontera Roasted Corn Salsa; I-iablanero Hot Sauce; Frontera

Roasted l-.labanero Salsa; Frontera Jalapeno Hot Sauce; Frontera Jalapeno Cilantro Salsa;

Frontera Peanut Mole Summer Sauce; Frontera Chipotle Pumpkin Salsa; Frontera Roasted

Tomato Salsa; Frontera Roasted Vegetable Soup; Frontera New Mexico Three Bean Chili;

Frontera Ballpark Nacho Sauce; Frontera Black  Nacho Sauce; Salpica Chipotle Garlic Salsa;

Frontera Cowboy Red Bean Dip; 'Frontel'a Grilled Pineapple Key Lime Salsa; Salpica Cilantro

Green Olive Salsa; Salpica Salsa co11 Queso with Smoked Jalapeno; Salpica Rustic Tomato

Salsa; Frontera Texas Picante Sauce; Salpica Tomato Jalapeno Salsa; Sal;   Salsa Verde;

Frontera Texas Chili Starter; Frontera White Bean Chili Starter; Fronlera Pouch Spicy

Guacamole; Frontera Chipotle Garlic Taco Skillet Sauce; Steak Taco'Skillet Sauce; Fromtera

Corn & Poblano Salsa; Frontera Crushed Fire-Roasted  with Chipotle; Frontera Crushed Fire-

Roasted Tomatoes with Roasted Garlic and Onion; Frontera Crushed Fire- Roasted Tomatillos

with Garlic and Poblano; Frontera Garlicky White Rice Seasoning Sauce, Frontera Roasted

Tomato Rice Seasoning Sauce with Garlic and Red Chile; Frontera Maraca Bloody Mary Mix;

Frontera Lime anti  Salt Tortilla Chips (altogether the "Products").

29.     Knowing that consumers like Plaintiffs are increasingly interested in purchasing

products that do not contain potentially harmful synthetic ingredients and added sugar,

Defendant sought to take advantage of this glowing market by labeling certain products as "All

Natural" and/or as containing Extra Cane June ("EJC")  instead of other ingredients, without

natural attributes, such as Xanthan Gum, Citric Acid, Disodium Phosphate, and/or Sodium

Citrate (the "Synthetic Ingredients").

30.     By affixing such a label to the packaging of the Products, Defendant was able to entice

consumers like Plaintiffs to pay a premium for the Products or pay more for them than they

otherwise would  had the truth be known.

7

31.     The labels of the Products are deceptive, false, unfair, and misleading in that Defendant prominently represented that the Products are "All Natural," and for Defendant listed ECJ as an ingredient instead of sugar.

32.     With respect to the Products that contain the Synthetic Ingredients, they are not "All Natural" because they contain such.

33.     Dipotassium Phosphate is a synthetic phosphorous and potassium supplement. 7 C.F.R. 205.605(b) identifies Dipotassium Phosphate as a synthetic substance.

34.     Xanthan Gum  is a synthetic thickener that is commercially manufactured by the likes of Cargill by fermenting bacteria with a carbohydrate (often GMO corn syrup), which is then sterilized and dried with isopropyl alcohol or ethanol   being pressed and ground for distribution. 7 C.F.R. 205.605(b) identifies Xanthan Gum as a synthetic substance.

35.     Citric Acid is a synthetically manufactured additive, preservative, and flavoring agent that is manufactured by fermenting a usually highly processed and for genetically modified corn syrup, with black mold (aspergillus nigcr), usually also genetically modified, and then treating the fermentation with sulfuric acid. In a warning letter to  a canning company, the FDA indicated that the addition of Citric Acid to a product  cite  the use of the term "natural" to describe the product. While Citric Acid does exist naturally in citrus fruits, on information and belief, the Citric Acid used in the Products is synthetically manufactured.

36.     Sodium Citrate is a shortened term for Trisodium Citrate- it is used as antioxidant in food as well as to improve the effects of other antioxidants. Sodium Citrate can also be used as an acidity regulator and   It is often added to highly acidic liquids to help neutralize them and promote gelling. Sodium citrate is manufactured by the neutralization of citric acid with sodium

8

hydroxide. ʺ C.F.R. 205.605(b) identifies Sodium Citrate as a synthetic substance.

37.     Consistent with FDA and FTC guidance, Plaintiffs and reasonable consumers, reasonably believe and assume that a product labeled "All Natural" does not contain any added artificial flavors, or synthetic substances.

38.     According to the FTC, "if companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word." https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate

39.     The FTC recently made clear that "'all—natural' or ' 100% natural' mean just that "If you advertise your product as 'all—natural' or '100% natural' and it contains artificial ingredients or chemicals, now is the natural time for a compliance check." https://www.ftc.gov/news—events/blogs/business—blog/201 6/04/are—your—all—natural—claims-all~accurate  ingredient.

40.     Moreover, some of the Products list Evaporated Cane Juice ("ECJ") as an ECJ, however, is not juice at all, it is sugar in disguise. In May 2016, the FDA made clear that "the term 'evaporated cane juice' is false and misleading because it suggests that the sweetener is 'juice' or is made from 'juice' and does not reveal that its basic nature and characterizing properties are those of sugar." The FDA continued: "The term 'evaporated cane juice' is not the common or usual name of any type of sweetener" and "this ingredient should instead be declared on food labels as "sugar.".

41.     By calling added sugar "ECJ," Defendant misled Plaintiffs and reasonable consumers into believing that certain of the Products contain less sugar then they actually do.

42.     The FDA could not be more clear: "Sweeteners derived from sugar cane cannot be listed in the ingredient declarations by names such as 'evaporated cane juice,' which suggests that the ingredients are made from or  fruit or vegetable 'juice[.] We consider such representations to be false and misleading[.]"

43.     Neither Plaintiffs nor any reasonable consumer would expect to find the Synthetic Ingredients in a product labeled "All Natural"

44.     Neither Plaintiffs nor any reasonable consumer would know nor should  that the Synthetic Ingredients are not natural when reviewing the product label.

45.     As a result of Defendant's deceitful labels, Defendant was able to charge and Plaintiffs and class members paid a premium for the Products-

46.     The Products, moreover, were worth less than they were represented to be, and Plaintiffs and Class Members paid extra for them due to the "All Natural" label and for the ECJ representation

47.     Because  labels of the Products are substantially similar in making the false "All Natural" and/or ECJ representations, Plaintiffs have standing to bring claims on behalf of all of the Products.

48.     Defendant's misrepresentations constitute unfair or deceptive acts or practices, including but not limited to the use or employment  any deception, fraud, false pretense, false promise, misrepresentation within the meaning of the CPPA

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**

10

## Section 3904(x)

49.     Plaintiff incorporates the allegations of paragraphs 1 through 48 as though fully set forth

herein, and alleges further:

50.     As noted above, the CPPA, §28-3904, provides that is it a violation  "whether or not any

consumer is in fact mislead, deceived or damaged thereby,", for any person to , inter alia, "sell

consumer goods in a condition or manner not consistent with state or federal law."

51.     Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

> (a)  Any affirmation of fact or promise made by the seller to the buyer which relates to
> the goods and become part of the basis of the bargain creates an express warranty that
> the goods shall conform the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates
> an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an
> express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words
such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an
affirmation merely of the value of the goods or a statement purporting to be merely the seller's
opinion or commendation does not create a warranty.

52.     D.C. Code § 28-314 provides:

> (a) Unless excluded or modified . . . a warranty that the goods
> shall be merchantable is implied in a contract for their sale if the seller is
> a merchant with respect to goods of that kind.  Under this section, the
> serving for value of food or drink to be consumers either on the premises
> or elsewhere is a sale.
> (b) Goods to be merchantable must be at least such as . . .
> ( i ) In the case of fungible goods, are of fair average quality
> within the description; and
> (ii) Are fit for the ordinary purposes for which such goods are
> used; and

11

(iii) Are adequately contained, packaged, and labeled as the agreement may require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

53.    Plaintiff and DC consumers have purchased the Products from the Defendant. The above-referenced warranties apply to the Products. Defendant has failed to honor these warranties.

54.    The Products are not merchantable because it is neither fit for the ordinary purpose for which such good are not, not conforms to the promises or affirmations covered.

55.    28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and"

56.    Plaintiff's counsel, on behalf of them and the DC Public, have given such notice

57.    Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and their sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law constitute unlawful trade practices, which violate the rights of Class Members and D.C. consumers protected by the CPPA. D.C. Code § 28-3904(x).

**Count 2 –
Violations of the CPPA –**

58.    Plaintiff incorporate the allegations of paragraphs 1 through 48  as though fully set forth herein, and alleges further:

59.    By marketing the Products in the manner described above, the Defendant violated the

following provisions of Section 3904 the CPPA, which makes it a violation for a merchant to

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quant ties that they do not have

(b). represent that goods have characteristics, uses, or benefits that they do not have;

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another

(e) represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and

(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

## Count 3
## Violations of the DC Commercial Code
### Sections a, b, d, e, h

60.     Plaintiff incorporates the allegations of paragraphs 1 through 48 as though fully set forth

herein, in particular those with respect to the DC Commercial Code, and alleges further

61.     The breaches of the DC Commercial Code as set forth above constitute an independent

cause of action, for which Class Members, on behalf of the DC General Public, seeks damages

as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, as to Counts 1-2 of the Complaint, Plaintiff, on behalf of the general public of

the District of Columbia, asks this court to award:

statutory or actual damages, trebled, except that in no case does any individual Plaintiff seek an amount in excess of $74,000;

disgorgement of profits obtained through the sales of the Covered Products in the District of Columbia;

attorneys' fees; and

an injunction against Defendants' violations of the CPPA; and

as to Counts 3, monetary damages for monies wrongfully obtained by the Defendants from the DC General Public

any other relief this court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W
Suite 211
Tel: (202)338-0818
Tcw19law@gmail.com

**Filed**
**D.C. Superior Court**
**08/03/2018 19:22RM**
**Clerk of the Court**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| A. Kevin Fahey<br>5301 Birds View Lane, Unit D<br>Alexandria, VA<br><br>on behalf of the General Public of the<br>District of Columbia<br><br>      Plaintiff,<br><br>v.<br><br>River North Foods, Inc. •<br> 449 N. Clark Street,<br>Chicago IL 60654.<br><br>      Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No:  **2018 CA 005498 B**<br><br>   Jury Trial Demanded |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kevin Fahey ("Plaintiff"), by and through his counsel, brings this action against River North Foods Inc. (" River Borth" or the "Defendant") on behalf of the General Public of the District of Columbia, and alleges the following based upon information, belief and the investigation of counsel:

### **NATURE OF THE CASE**

1

1. Plaintiff brings this action on behalf of the general public in the District of Columbia to redress the pattern of fraudulent, deceptive and otherwise improper sales and marketing practices engaged in by the Defendant

2. In short, the Defendant markets numerous of its products as "all natural". Consumers are will to pay a premium for "natural" products. However, to the contrary, the products at issue contain various ingredients that do not qualify as natural. To the contrary, these ingredients are synthetic.

3. Class Members seeks to enjoin such fraud, obtain disgorgement of profits from sales of the products in question and obtain appropriate monetary damages for the consumers who purchased such products in the District of Columbia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9. This Court has personal jurisdiction over Frontera pursuant to D.C. Code §13-423 and because Frontera products are sold at stores throughout Washington, D.C.

10.     A substantial part of the actions which gave rise to Class Members' cause of action occurred in this jurisdiction.

## THE PARTIES

11.     Plaintiff Keven Fahey is a resident of Virginia.

12.     Frontera Foods Inc. is an Illinois corporation with its principal   of business in Chicago. Frontera sells its food products all over the United States, including the District of Columbia. .

**LEGAL FRAMEWORK - THE INTERESTS OF THE CLASS MEMBERS AND THE
GENERAL PUBLIC AND THE DC CONSUMER PROTECTION ACT**

13.      The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §

28-3901 *et seq.*, prohibits unlawful trade practices.  The prohibited trade practices include, in

relevant part,

> (a)  represent that goods or services have a source, sponsorship, approval,
> certification, accessories, characteristics, ingredients, uses, benefits, or quantities
> that they do not have
>  (b). represent that goods have  characteristics, uses, or benefits that they do not
> have;
>   (d) represent that goods or services are of particular standard, quality, grade,
> style, or model, if in fact they are of another
> e. represent that the subject of a transaction has been supplied in accordance with
> a previous representation when it has not; and
> (h) advertise or offer goods or services without the intent to sell them or without
> the intent to sell them as advertised or offered; and
> (x) to sell consumer goods in a condition or manner not consistent with that
> warranted by operation of sections 28:2-312 through 318 of the District of
> Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

14.      Additionally, "the CPPA's extensive enforcement mechanisms apply not only to the

unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law

prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

15.      The CPPA allows for treble damages, or $1500 per violation, whichever is greater, as

well as reasonable attorneys' fees, punitive damages, an injunction against the unlawful trade

practice, "additional relief as may be necessary to restore the consumer money or property . . .

which may have been acquired by means of the unlawful trade practice," and "any other relief

the court deems proper." D.C. Code § 28-3905(k)(1).

16.      Plaintiff brings this action on behalf of himself and as a Representative Class Members

3

acting for the interests of the general public of the District of Columbia, seeking relief from
Defendant's use of trade practices in violation of laws of the District of Columbia, pursuant to
D.C. Code § 28-3905(k)(1).

17.      Frontera food products , are "consumer good[s]", and the Defendant is a "merchant"
within the meaning of the CPPA.  D.C. Code § 28-3901(1)(2) and (7).

## THE FAHEY PURCHASE

18.      On November 17th 2017, Mr. Fahey purchased a bottle of Frontera Guacamole mix,
picking up the bottle from the UPS Store at 1300 Pennsylvania Avenue, N.W. A copy of the
receipt is attached as Exhibit A.

### Class Allegations

24.      This action has been brought and may be maintained as a class action pursuant to
Superior Court Rule of Civil Procedure 23 because there is a well-defined community of
interest among the persons who comprise the readily ascertainable classes defined below and
because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as
a class action.

**Relevant Time Period:** The relevant time period is defined as the time period beginning three
years prior to the filing of this action until judgement is entered.

### Class Definition

All persons who reside in the District of Columbia. currently or formerly
and who purchased The Products, as defined *infra*  in the District of
Columbia during the relevant time period.

Excluded from the class are:(1)  River North, its subsidiaries, and its legal

4

representatives, officers, directors, assigns and successors; and (2) all state and/or federal court judges who may preside over this case, their staff, and their immediate family members.

25.    Numerosity:    The class members are so numerous that the individuals joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the minimum required for numerosity under DC law.

26.    Commonality and Predominance:  Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members.

27.    These common questions include, but are not limited to:

28.

(a) Whether River North contributed to, committed, or is responsible for the conduct alleged herein;

(b) Whether River North's conduct constitutes the violations of law alleged herein;

(c) Whether River North acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

(d). Whether Class Members are entitled to injunctive relief; and

(e). Whether Class Members are entitled to restitution and damages; and

(f) Whether the Defendant's conduct violated the various causes of action sets forth *infra* and whether Plaintiff and the Class Members are entitled to relief, and the amount and nature of such relief in the form of an injunction and /or restitution.

**ALLEGATIONS OF FACTS**

29.    Defendant manufactures, sells, and distributes Mexican food products, including Nuevo Tex-Mex Salpica Mango Pea : Nuevo Tex—Mex Salpica I-Iabanero Lime Salsa; Nuevo Tex-Mex Salpica Jalapeno Jacl: Queso; Frontera Salsa Tomatillo; Frontera Salsa Chipotle; Frontera

5

Salsa Mango  Lime; Froitera Salsa Guajillo; Frontera Salsa New Mexico Red Chile;  Red Tomato Salsa Mexicana (Medium); Frontera Red Tomato Salsa Mexicana (Mild); Frontera Key Lime Cilantrc Taco Skillet Sauce; Frontera Key Lime Shrimp Taco Skillet Sauce; Frontera New Mexico Taco Ski let Sauce;  Chicken Taco Skillet Sauce; Frontera Garlicky Camitas Slow Cook Sauce; Frontera Garlic Pork Carnilas Slow Cook Sauce; Frontera Roasted Garlic Chicken Skillet Sauce; Frontera Red Chile Enchilada Sauce; Frontera Texas Original Taco Sauce; Frontera Chipotle Garlic Taco Sauce; Frontera Ground Beef  Skillet Sauce; Frontera Classic Fajita Skillet Sauce; Frontera Classic Red Mole Skillet Sauce; Frontera Mexican White Rice Seasoning Sauce; Frontera Mexican Red  Seasoning Sauce; Frontera Chipotle Chili Seasoning Sauce; Fronte·a Green Chile Enchilada Sauce; Roasted Tomato Chicken Skillet Sauce; Frontera Veggie Taco Skillet Sauce; Frontera Came Asada Marinade; Frontera Chipotle I-loney Marinade; Frontera Al Pastor  ; Frontera Three Citrus Garlic Marinade; Frontera Guacamole Mix; Froutera Original  Mix with Tangy Tomatillo, Green Chile and Garlic; Frontera Key Lime Avocado Salsa; Frontera Black Bean Chili Staiter; Frontera Black Bean Tomato  ; Frontera Roasted Tomato Soup; Frontera Enchilada Sauce Chipotle Garlic; Frontera Cranberry Salsa; Frontera Classic Tortilla Soup; Frontera Roasted Corn Salsa; I-iablanero Hot Sauce; Frontera Roasted I-.labanero Salsa; Frontera Jalapeno Hot Sauce; Frontera Jalapeno Cilantro Salsa; Frontera Peanut Mole Summer Sauce; Frontera Chipotle Pumpkin Salsa; Frontera Roasted Tomato Salsa; Frontera Roasted Vegetable Soup; Frontera New Mexico Three Bean Chili; Frontera Ballpark Nacho Sauce; Frontera Black  Nacho Sauce; Salpica Chipotle Garlic Salsa; Frontera Cowtoy Red Bean Dip; 'Fronte1'a Grilled Pineapple Key Lime Salsa; Salpica Cilantro Green Olive Salsa; Salpica Salsa co11 Queso with Smoked Jalapeno; Salpica Rustic Tomato Salsa; Frontera Texas Picante Sauce; Salpica Tomato Jalapeno Salsa; Sal;  Salsa Verde;

6

Frontera Texas Chili Starter; Frontera White Bean Chili Starter; Fronlera Pouch Spicy

Guacamole; Frontera Chipotle Garlic Taco Skillet Sauce; Steak Taco'Skillet Sauce; Fromtera

Corn & Poblano Salsa; Frontera Crushed Fire-Roasted   with Chipotle; Frontera Crushed Fire-

Roasted Tomatoes with Roasted Garlic and Onion; Frontera Crushed Fire- Roasted Tomatillos

with Garlic and Poblano; Frontera Garlicky White Rice Seasoning Sauce, Frontera Roasted

Tomato Rice Seasoning Sauce with Garlic and Red Chile; Frontera Maraca Bloody Mary Mix;

Frontera Lime anti   Salt Tortilla Chips (altogether the ''Products'').

30.     Knowing that consumers like Plaintiffs are increasingly interested in purchasing

products that do not contain potentially harmful synthetic ingredients and added sugar,

Defendant sought to take advantage of this glowing market by labeling certain products as "All

Natural" and/or as containing Extra Cane June ("EJC")  instead of other ingredients, without

natural attributes, such as Xanthan Gum, Citric Acid, Disodium Phosphate, and/or Sodium

Citrate (the "Synthetic Ingredients").

31.     By affixing such a label to the packaging of the Products, Defendant was able to entice

consumers like Plaintiffs to pay a premium for the Products or pay more for them than they

otherwise would   had the truth be known.

32.     The labels of the Products are deceptive, false, unfair, and misleading in that Defendant

prominently represented that the Products are "All Natural," and for Defendant listed ECJ as an

ingredient instead of sugar.

33.     With respect to the Products that contain the Synthetic Ingredients, they are not "All

Natural" because they contain such.

34.     Dipotassium Phosphate is a synthetic phosphorous and potassium supplement. 7 C.F.R.

205.605(b) identifies Dipotassium Phosphate as a synthetic substance.

35.    Xanthan Gum  is a synthetic thickener that is commercially manufactured by the likes of

Cargill by fermenting bacteria with a carbohydrate (often GMO corn syrup), which is then

sterilized and dried with isopropyl alcohol or ethanol  being pressed and ground for

distribution. 7 C.F.R. 205.605(b) identifies Xanthan Gum as a synthetic substance.

36.    Citric Acid is a synthetically manufactured additive, preservative, and flavoring agent

that is manufactured by fermenting a usually highly processed and for genetically modified corn

syrup, with black mold (aspergillus niger), usually also genetically modified, and then treating

the fermentation with sulfuric acid. In a warning letter to  a canning company, the FDA

indicated that the addition of Citric Acid to a product cite  the use of the term "natural" to

describe the product. While Citric Acid does exist naturally in citrus fruits, on information and

belief, the Citric Acid used in the Products is synthetically manufactured.

37.    Sodium Citrate is a shortened term for Trisodium Citrate- it is used as antioxidant in

food as well as to improve the effects of other antioxidants. Sodium Citrate can also be used as

an acidity regulator and   It is often added to highly acidic liquids to help neutralize them and

promote gelling. Sodium citrate is manufactured by the neutralization of citric acid with sodium

hydroxide. 7 C.F.R. 205.605(b) identifies Sodium Citrate as a synthetic substance.

38.    Consistent with FDA and FTC guidance, Plaintiffs and reasonable consumers,

reasonably believe and assume that a product labeled "All Natural" does not contain any added

artificial flavors, or synthetic substances.

39.    According to the FTC, "if companies market their products as 'all natural' or '100%

natural,' consumers have a right to take them at their word." https://www.ftc.gov/news-

8

events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate

40.    The FTC recently made clear that "'all—natural' or ' 100% natural' mean just that "If you advertise your product as 'all—natural' or '100% natural' and it contains artificial ingredients or chemicals, now is the natural time for a compliance check." https://www.ftc.gov/news—events/blogs/business—blog/201 6/04/are—your—all—natural—claims-all~accurate  ingredient.

41.    Moreover, some of the Products list Evaporated Cane Juice ("ECJ") as an ECJ, however, is not juice at all, it is sugar in disguise. In May 2016, the FDA made clear that "the term 'evaporated cane juice' is false and misleading because it suggests that the sweetener is 'juice' or is made from 'juice' and does not reveal that its basic nature and characterizing properties are those of sugar " The FDA continued: "The term 'evaporated cane juice' is not the common or usual name of any type of sweetener" and "this ingredient should instead be declared on food labels as "sugar.".

42.    By calling added sugar "ECJ," Defendant misled Plaintiffs and reasonable consumers into believing that certain of the Products contain less sugar then they actually do.

43.    The FDA could not be more clear: "Sweeteners derived from sugar cane cannot be listed in the ingredient declarations by names such as 'evaporated cane juice,' which suggests that the ingredients are made from or  fruit or vegetable 'juice[.] We consider such representations to be false and misleading[.]"

44.    Neither Plaintiffs nor any reasonable consumer would expect to find the Synthetic Ingredients in a product labeled "All Natural"

9

45.     Neither Plaintiffs nor any reasonable consumer would know nor should  that the Synthetic Ingredients are not natural when reviewing the product label.

46.     As a result of Defendant's deceitful labels, Defendant was able to charge and Plaintiffs and class members paid a premium for the Products-

47.     The Products, moreover, were worth less than they were represented to be, and Plaintiffs and Class Members paid extra for them due to the "All Natural" label and for the ECJ representation

48.     Because  labels of the Products are substantially similar in making the false "All Natural" and/or ECJ representations, Plaintiffs have standing to bring claims on behalf of all of the Products.

49.     Defendant's misrepresentations constitute unfair or deceptive acts or practices, including but not limited to the use or employment  any deception, fraud, false pretense, false promise, misrepresentation within the meaning of the CPPA

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

50.     Plaintiff incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein, and alleges further:

51.     As noted above, the CPPA, §28-3904, provides that is it a violation  "whether or not any consumer is in fact mislead, deceived or damaged thereby,", for any person to , inter alia, "sell consumer goods in a condition or manner not consistent with state or federal law."

52.     Section 313 of the D.C. UCC (DC Code § 28:313 provides:

10

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and become part of the basis of the bargain creates an express warranty that the goods shall conform the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation does not create a warranty.

53.    D.C. Code § 28-314 provides:

(a) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumers either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as . . .

( i ) In the case of fungible goods, are of fair average quality within the description; and

(ii) Are fit for the ordinary purposes for which such goods are used; and

(iii) Are adequately contained, packaged, and labeled as the agreement may require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

54.    Plaintiff and DC consumers have purchased the Products from the Defendant. The above-referenced warranties apply to the Products. Defendant has failed to honor these warranties.

55.    The Products are not merchantable because it is neither fit for the ordinary purpose for which such good are not, not conforms to the promises or affirmations covered.

11

56.     28:2-507 (3) (A) requires that a buyer must within a "reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and"

57.     Plaintiff's counsel, on behalf of them and the DC Public, have given such notice

58.     Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and their sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law constitute unlawful trade practices, which violate the rights of Class Members and D.C. consumers protected by the CPPA.  D.C. Code § 28-3904(x).

### Count 2 –
### Violations of the CPPA –

59.     Plaintiff incorporate the allegations of paragraphs 1 through 49  as though fully set forth herein, and alleges further:

60.     By marketing the Products in the manner described above, the Defendant violated the following provisions of Section 3904 the CPPA, which makes it a violation for a merchant to

> (a)  represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have
>
> (b).  represent that goods have characteristics, uses, or benefits that they do not have;
>
> (d)  represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another
>
> (e)  represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and
>
> (h)  advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

12

**Count 3**
**Violations of the DC Commercial Code**
**Sections a, b, d, e, h**

61.     Plaintiff incorporates the allegations of paragraphs 1 through 49 as though fully set forth

herein, in particular those with respect to the DC Commercial Code, and alleges further

62.     The breaches of the DC Commercial Code as set forth above constitute an independent

cause of action, for which Class Members, on behalf of the DC General Public, seeks damages

as set forth below.

PRAYER FOR RELIEF

WHEREFORE, as to Counts 1-2 of the Complaint, Plaintiff, on behalf of the general public of

the District of Columbia, asks this court to award:

statutory or actual damages, trebled, except that in no case does any individual Plaintiff seek an
amount in excess of $74,000;

disgorgement of profits obtained through the sales of the Covered Products in the District of
Columbia;

attorneys' fees; and

an injunction against Defendants' violations of the CPPA; and

as to Counts 3, monetary damages for monies wrongfully obtained by the Defendants from the
DC General Public

any other relief this court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W
Suite 211
Tel: (202)338-0818
Tcw19law@gmail.com

14



Try Prime        Grocery & Gourmet Food ▾

EN    Hello. Sign in
      Account & Lists ▾    Orders    Try Prime ▾            Cart

Departments ▾    Your Amazon.com    Today's Deals

Grocery    Deals    Snacks ▾    Breakfast ▾    Warm Beverages    Cold Beverages    Cooking Staples ▾    Baby Food ▾    Candy & Chocolate ▾    Prime Pantry ▾



FREE Shipping on orders

3000 . Sold by TheNewMall and

der within 14 hrs 24 mins and
l checkout. Details

airfax, 22030

Shipping with Amazon Prime

Turn on 1-click ordering

to Cart

to List

4 new from $8.89

- Sweetner
- You're buying single pack of 8 Oz

shipping    Add to Cart

shipping    Add to Cart

Sold by: Eternity Essentials

Have one to sell?    Sell on Amazon

Share

Frequently bought together

Total price: $19.75

12/7/2017                    Gmail - Your Amazon.com order of "Frontera All Natural..." has shipped!

 Gmail                                    A. Kevin Fahey <akevinfahey@gmail.com>

**Your Amazon.com order of "Frontera All Natural..." has shipped!**
1 message

**Amazon.com** <shipment-tracking@amazon.com>                    Wed, Nov 15, 2017 at 8:43 PM
Reply-To: no-reply@amazon.com
To: akevinfahey@gmail.com

# amazon

Hi A., your package will arrive:
## Friday, November 17

Track package

**ON THE WAY**

Frontera All Natural...
Order #112-2815466-9053820

**SHIP TO**

Attn A Kevin Fahey
7032447658
UPS Store 1300 PENNSYL...

**SHIPMENT TOTAL**

$9.89

Return or replace items in Your Orders

Gmail - Your Amazon.com order of "Frontera All Natural..." has shipped!

Recommended for you based on Frontera All Na...





Jawbone Mini Jambox...
$48.00 ✓prime

OXO Good Grips 3-in-1...
$9.99 ✓prime

Unless otherwise noted, items sold by Amazon.com LLC are subject to sales tax in select states in accordance with the applicable laws of that state. If your order contains one or more items from a seller other than Amazon.com LLC, it may be subject to state and local sales tax, depending upon the sellers business policies and the location of their operations. Learn more about tax and seller information.

Your invoice can be accessed here.

This email was sent from a notification-only address that cannot accept incoming email. Please do not reply to this message.

11/18/2017    https://www.amazon.com/progress-tracker/package/ref=pt_redirect_from_gp?_encoding=UTF8&from=gp&ie=UTF8&itemId=&orderId=112-281...

All ▾



EN | Hello, A.
   | Account & Lists ▾    Orders    Prime ▾            Cart

Departments ▾        Browsing History ▾   A.'s Amazon.com

Your Account  ›  Your Orders  ›  Order Details  ›  Track Package

# Delivered Friday, November 17

Your package was delivered.

☐ **Delivered**
Attn A Kevin Fahey 7032447658
UPS Store 1300 PENNSYLVANIA AVE NW STE 190
WASHINGTON, DC 20004-30  2

See all updates



**Shipped with USPS**

Tracking ID
9374889678090021123032

**Order Info**

View order details

**Recommendations for items from across our store**



Construction Accessory Kit,
for Bit
                        52
$11.99



Jawbone Mini Jambox
Wireless Bluetooth
Speaker (Graphite Facet) -
Standard Packaging
                     1,786
$48.00



Ozobot Sticker Codes
(Speed + Direction Pack)
for use with Ozobot
                        9
$12.99



OXO Good Grips 3-in-1
Avocado Slicer, Green
                     2,114
$9.78



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Kevin Fahey et al*
_____
                                                    Plaintiff

River Front Foods Inc                              Case Number    2018 CA 005498 B
449 No Clark Street
CHicago IL 60665
                                   _____
                                   fendant

### SUMMONS

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed o the plaintiff at the address stated on this Summons.

      You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Thomas C. Willcox*                                *Clerk of the Court*
_____
Name of Plaintiff's Attorney

*1701 16th Street, N.W., Suite 211*               By _____
_____
Address
*Washington DC  20009*
_____
*202.338.0818*                                    Date    08/02/2018
_____
Telephone
如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                    CASUM.doc



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Telephone: (202) 879-1133 • Website: www.dccourts.gov

A. KEVIN FAHEY
Vs.
RIVER NORTH FOODS INC

C.A. No.     2018 CA 005498 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date:  August 2, 2018
Initial Conference: 9:30 am, Friday, November 02, 2018
Location:  Courtroom 317
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief    Judge    Robert    E.    Morin

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue   NW**
**Washington, D.C.  20001**

**September 26, 2018**

CASE NAME:  A. KEVIN FAHEY Vs. RIVER NORTH FOODS INC et al

CASE NUMBER:  2018 CA 005498 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

Mr THOMAS C WILLCOX
1701 16th Street NW
Suite 211
WASHINGTON, DC 20009

2018 CA 005498 B

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

CANOR

## THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division
**500 Indiana Avenue  NW**
**Washington, D.C.  20001**

**September 26, 2018**

CASE NAME:  A. KEVIN FAHEY Vs. RIVER NORTH FOODS INC et al

CASE NUMBER:  2018 CA 005498 B

## NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

GEORGE A GASPER
441 4th Street, NW
WASHINGTON, DC 20001

2018 CA 005498 B

CANOR